THREE BALES OF CLOTH (UNITED STATES v.). See Case No. 16,495.

---

## Case No. 14,009.

### The THREE BROTHERS.

[1 Gall. 142.] [1]

Circuit Court, D. Massachusetts.    May Term, 1812.

SHIPPING—COASTING AND FISHING ACT—"FOREIGN VOYAGE"—FISHING VOYAGE.

A "foreign voyage," within the meaning of the 8th section of the coasting and fishing act, 18th February, 1793, c. 8 [1 Stat. 308], where a vessel departs from the United States for a foreign port with an intent there to engage in trade; and not merely a voyage to a foreign port within the usual voyage of vessels licensed for the fisheries.

[Cited in The Swallow, Case No. 13,666; The Nymph, Id. 10,388; Taber v. U. S., Id. 13,-722; The Willie G., Id. 17,762; The Ocean Bride, Id. 10,404; The Ocean Spray, Id. 10,-412.]

[See The Atlantic, Case No. 621.]

[Cited in Simpson v. Story, 145 Mass. 499, 14 N. E. 642.]

[Appeal from the district court of the United States for the district of Massachusetts.]

G. Blake, for the United States.
W. Prescott, for claimant.

STORY, Circuit Justice. The information alleges various offences, but I need not state any but that which is alleged in the first count, because at the argument all others were abandoned. The offence charged in the first count is, that the schooner was a vessel of the United States, licensed for the fisheries, and that, while her license was in force, she proceeded on a foreign voyage, contrary to the 8th section of the coasting act, 18th February, 1793, c. 8 (2 Laws [Folwell's Ed.] 168 [1 Stat. 308].

It appears in evidence, that the claimant [Henry Story], is the owner of the schooner, which was duly licensed for the fisheries, and in the spring of 1809 was chartered to one Michael Fitzpatrick, for a fishing voyage, to the Labrador shore; and that whatever irregularity was practised in the voyage, was without the privity or consent of the claimant. On the 25th of June, 1809, the schooner sailed from Boston, on her voyage; and on the 1st of October, she returned with a cargo of fish, which consisted of about 58,000 fish caught by the crew, and about fifty quintals of dry codfish, which had been purchased by Fitzpatrick, of one Thomas Lander; and eight barrels of mackerel, and eight barrels of salmon, which had been also purchased by Fitz-

---

[1] [Reported by John Gallison, Esq.]

patrick, but of whom is uncertain: they were not however caught by or purchased of the crew of the schooner. These articles, (which altogether were of less value than $400) were taken on board at Cyrus Harbor, on the Labrador shore, to which place vessels employed in the fisheries usually resort in the course of their voyages, and were afterwards landed at Boston, on the return voyage.

The only question is, as to what is a proceeding on a foreign voyage within the true intent and meaning of the section aforesaid. Now it is very clear, upon the slightest inspection of the act, that the mere proceeding to a foreign port, if within the customary range of a fishing voyage, can never be deemed a breach of the act. When the legislature provide for the employment of vessels in the fisheries, it must be presumed that they are acquainted with the nature of the service, and and the usual course of the voyage. To suppose that they would grant a license to pursue the fisheries, and yet deny the means by which the employment is to be effected, would be absurd. Now it is notorious, that the fisheries are usually carried on, on the Labrador coast, and other waters and banks belonging to Great Britain, near the shores of Newfoundland. The right of American citizens to this trade is secured by the solemn stipulations of the treaty of peace, 1783, art. 3. Therefore, though every vessel employed in such trade should proceed to such foreign shores and waters, yet it manifestly could not be considered a foreign voyage, within the act, if the intention were bona fide to pursue the fisheries. Now it is admitted, that this vessel was bona fide engaged in the fisheries, and that she was at Cyrus Harbor according to the accustomed course of the voyage. This therefore furnishes no evidence of a foreign voyage within the act.

But it is said, that the purchase of these articles at Cyrus Harbor was an employment in a trade not authorized by the license, and therefore as to this, the voyage must be considered a "foreign voyage." But in my judgment, the foreign voyage intended by the act is where the vessel departs from the United States for a foreign port with an intent there to engage in trade, and without an intent to seek employment in the fisheries. This construction is fortified by the 21st section of the same act, which prohibits a vessel really engaged in the fisheries from touching or trading at a foreign port, without a permit for the purpose; and by the 32d section, which prohibits, under the penalty of forfeiture, any licensed vessel from being employed in any other trade than that for which she is licensed. Perhaps it is not easy to reconcile all the provisions of the act together; but it seems to me that the 8th section points to a foreign voyage, where there is no intent to pursue the fisheries; the 21st section to voyages where the vessel is engaged in the fisheries, and afterwards proceeds and trades with her cargo at a foreign port; and the 32d

section, with a sweeping effect to all manner of trading beyond the authority of the license. In some cases these sections may be cumulative, and perhaps cannot otherwise be completely reconciled.

Upon principle, as well as upon the authority of the case of U. S. v. The Active (in the supreme court) 7 Cranch [11 U. S.] 100, I am satisfied that the purchase and taking on board of the fish, &c. at Cyrus Harbor, was a trading within the 32d section; but as there is no count founded on that section, the forfeiture cannot in this suit be adjudged. The opinion of the court below agrees with mine, as to the construction of the law, so far as that opinion goes; but the want of a proper count, as a foundation of the judgment, does not seem to have attracted its attention.

Decree of the district court reversed, reasonable cause of seizure certified.

THREE CASES (UNITED STATES v.). See Case No. 16,496.

THREE CASES OF TOYS (UNITED STATES v.) See Case No. 16,499.

THREE HORSES (UNITED STATES v.). See Case No. 16,500.

THREE HUNDRED AND EIGHT CADDIES OF TOBACCO (UNITED STATES v.). See Case No. 16,501.